**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 08488 |
| | ) | |
| Sotirios Pappas | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Konstantinos Pnevmatikos | ) | |
| | ) | Adv. No. 23 A 387 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| Sotirios Pappas | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Konstantinos Pnevmatikos ("Plaintiff") filed a six-count complaint

("Complaint") against Defendant Sotirios Pappas ("Defendant"), seeking a finding that a debt

owed by Defendant to Plaintiff is nondischargeable under sections 523(a)(2), (4), (6), and an

order denying Defendant a discharge in his underlying bankruptcy case under section 727 (a)(5).

Defendant filed a motion to dismiss the complaint ("Motion") under Fed. R. Civ. P. 12(b)(6),

asserting that the Complaint should be dismissed with prejudice because Plaintiff failed to state a

claim for relief.  The court entered a briefing schedule, Plaintiff filed a response ("Response"),

and Defendant filed a reply ("Reply").  Having reviewed the Complaint as well as the papers

filed, the court finds that the Complaint fails to state a claim for which relief can be granted.

Accordingly, the Motion is 1) denied on the bases that Plaintiff's causes of action are not time-

barred; and 2) granted as to counts I – VI for failure to state a claim.

## I. JURISDICTION

This court has subject matter jurisdiction under 28 U.S.C. § 1334 and the district court's Internal Operating Procedure 15(a). This is a core proceeding 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## II. BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016). For purposes of deciding this Motion, the court accepts the following well-pleaded facts as true:[1]

Plaintiff is a creditor of Debtor.

Plaintiff and at least two other individuals were induced by Defendant falsely representing himself as an accredited broker with legitimate securities firms who would guarantee high returns from his specialized knowledge. Defendant would provide investors with personal checks which were purportedly meant to secure the victims' investments.

In 2002, Plaintiff gave Defendant amounts totaling €688,160[2] to invest in the derivative market on the Athens Stock Exchange. Defendant promised significant profits. With Plaintiff's authorization, Defendant would open an account in Plaintiff's name in order for Defendant to trade derivatives on Plaintiff's behalf. Stockbrokers in Greece were not permitted to open a

---

[1] With his Motion, Defendant attached what is appears to be a translated Greek criminal court opinion from 2017. The criminal action apparently relates to the investment at issue here. Plaintiff argues this outside evidence is improper for a motion to dismiss. Regardless of appropriateness, the attached opinion was not material to the opinion and not relied upon.

[2] The Complaint alleges the total of the three judgements related to these investments is €688,460, Complaint, ¶ 26, but the three investments and three judgments appear to add up to €688,160, Complaint, ¶¶ 23-25. While it may be important for calculating damages, the actual total is not relevant to this opinion.

derivatives account on a client's behalf in this way.  Defendant took the funds and transferred them to a place beyond the reach of Plaintiff.  Defendant never intended to repay the funds. Complaint, ¶ 67.

Defendant wrote at least three checks to Plaintiff for the total amount Plaintiff had invested.  Plaintiff attempted to cash the three checks, but the checks were not cashed due to a lack of funds in the corresponding bank accounts.[3]

In 2003, Plaintiff obtained three judgments in Greek courts against Defendant: first - €38,160, plus costs of €1,170.95, and interest; second - €350,000, plus costs of €10,714.59, and interest; third - €300,000, plus costs of €5,863.90, and interest.  The amounts total €688,460 plus costs.  Defendant appealed all three judgments in Greek courts.  In 2006, a Greek appellate court affirmed all three judgments.  Defendant appealed again and, in 2008, the judgments were affirmed again.

There is, allegedly, no evidence Defendant ever invested any of Plaintiff's funds.

### III.  DISCUSSION

To defeat a motion to dismiss, a complaint must describe the claim in enough detail to give notice to the defendant.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, it must be "plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), unless the subject matter of that pleading

---

[3] Some of the paragraphs appear to be copied from the attached Greek court opinions without any editing.  The "Applicant" referenced in Complaint paragraphs 15, 18-20 is never defined in the Complaint.  The confusion caused by this apparent error ended up not being material to this opinion.

implicates a heightened standard.  *See* Fed. R. Civ. P. 9.  The circumstances supporting an action

sounding in fraud must be articulated with particularity under Rule 9.

**A.      Plaintiff is Not Time-Barred from Asserting Claims**

The Defendant argues that Plaintiff's claims are time-barred by the relevant statute of

limitations.  While Plaintiff brought court actions against Defendant long ago, the judgments

make no mention of fraud.  Defendant argues Plaintiff is now prevented from bringing an action

arguing fraud.

> [T]here are two distinct issues in a nondischargeability proceeding.  The first, the
> establishment of the debt itself, is governed by the state statute of limitations – if
> suit is not brought within the time period allotted under state law, the debt cannot
> be established.  But the question of the dischargeability of the debt under the
> Bankruptcy Code is a distinct issue governed solely by the limitations periods
> established by bankruptcy law.

*In re Collazo*, 817 F.3d 1047, 1051-52 (7th Cir. 2016) (internal quotation omitted).

The determination of the dischargeability of a debt under section 523 is a question for the

bankruptcy court and governed by the time limits imposed in the Bankruptcy Code.  The

Defendant does not question the timelines of discharge and dischargeability actions.  The

Plaintiff's established debts also are not barred by the statute of limitations.  However, it is

unclear from the Complaint whether Plaintiff is attempting to establish new debts by arguing

new claims for damages that were not part of the original Greek judgments.  Plaintiff alleges he

generally suffered damages, "the full amount of which has not yet been determined, but which is

believed to be not less than $756,511."  Complaint, ¶¶ 32, 42, 47, 54, 62, 71.  Any new causes of

action and resulting damages may be barred by the statute of limitations.  Taking the Complaint

4

in the light most favorable to the Plaintiff, the Court assumes Plaintiff is only trying to prevent

the discharge of the established debts outlined in the Complaint.[4]

The lengthy time between the events described in the Complaint and the present

proceedings may still be relevant in the court's evaluation of the sufficiency of the evidence.

### B.    Count VI Fails to State a Claim for Relief

Defendant argues the Complaint fails to allege all elements of an action under section

727(a)(5), which is Count VI of the Complaint.  Section 727(a)(5) prevents a debtor from

receiving a discharge if "the debtor has failed to explain satisfactorily, before determination of

denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the

debtor's liabilities."  11 U.S.C. § 727(a)(5).  "Section 727(a)(5) is broadly drawn and clearly

gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does

not adequately explain a shortage, loss, or disappearance of assets."  *First Federated Life Ins.

Co. v. Martin* (*In re Martin*), 698 F.2d 883, 886 (7th Cir. 1983).

"[T]he party objecting to discharge has the burden of proving that the debtor at one time

owned substantial and identifiable assets that are no longer available for his creditors."

*Stathopoulos v. Bostrom* (*In re Bostrom*), 286 B.R. 352, 364 (Bankr. N.D. Ill. 2002).  If that

burden is met, then the debtor must provide a sufficient explanation for the loss.  *Id.*

Plaintiff pleaded Count VI as a broad and bare recitation of the statute with a general re-

allegation of the Complaint's prior paragraphs.  The only count-specific allegation is that

---

[4] Additionally, liquidating the remaining damages for existing debt would be done in the appropriate Greek court. In the Seventh Circuit, the bankruptcy court can, but has discretion to, decide whether it should liquidate the debt or simply determine dischargeability.  *See In re Hallahan*, 936 F.2d 1496 (7th Cir. 1991); *Kelly v. Che* (*In re Young-Soo Che*), No. 11 A 929, 2013 WL 2109438, at *7 (Bankr. N.D. Ill. May 15, 2013) ("[T]his court finds it more appropriate to refrain from entry of a money judgment and to restrict its final judgment in this proceeding to a finding of [dischargeability or] nondischargeability.").

Defendant "failed to explain the loss of numerous items of property in which they had an interest as of the date of the petition … ." Complaint, ¶ 74. Plaintiff then specifies that that includes, but is not limited to, funds provided from him *and* funds provided by a Mr. Vasiliou and a Mr. Raptis. The dissipation of the funds (or assets) and who has an interest in the funds (or assets), when and how they were transferred to the Debtor and whether they were available to the Debtor's creditors at anytime are missing from the allegations.

First, as to the funds provided by Vasiliou and Raptis, Plaintiff only discusses their funds in paragraph 29 of the complaint and does so in a vague allegation of inducing investments. It is unclear from the allegations whether the amounts are substantial, identifiable, whether the Defendant ever owned these funds, or what interest the Defendant would have been expected to have had at the Petition date. Second, the Complaint alleges the failure to explain the loss of "numerous items of property," but the only possible property referenced in the Complaint are funds provided by Plaintiff and the funds provided by Vasiliou and Raptis. It is impossible to tell from the Complaint what "numerous items of property" of the debtor that Plaintiff is referring to. In the context of a section 727(a)(5) action that is particularly problematic due to burden shifting to the Defendant to explain the loss. The Defendant will be unable to provide records and explanation for the loss of unknown and unexplained property.

In his Response, the Plaintiff argues he satisfied this pleading requirement by his pleading of damages, which is "believed to be not less than $756,511.00," which encompasses "injury to [Plaintiff's] business or property." The amount must be identifiable with some level of specificity and must have been property that the Defendant has an interest such that the property was available to his creditors. Plaintiff's number is not only vague (being "not less than"), but also is comprised of "injury to … business or property." The Defendant injuring the Plaintiff

6

does not equate to a failure to explain the loss of the Debtor's assets available to the creditors. Nor does asserting that "the loss of numerous items of property" identify assets sufficient to shift the burden to the Debtor.  The Plaintiff also argues that the Motion to Dismiss itself is evidence that Defendant is aware of the allegations and *Iqbal* has been satisfied.  However, when ruling on a motion to dismiss the issue is whether the *complaint* contains sufficient factual matter.  *See generally Iqbal,* 556 U.S. 677-80.

For the reasons state above, Count VI must be dismissed.


**C.      Plaintiff Failed to Successfully Plead Counts I-V under section 523**

Defendant argues that Counts I-V of the Complaint lack the necessary particularity for alleging fraud as required by Fed. R. Civ. P. 9(b).

While "it is only necessary to set forth a basic outline of fraud in order to alert the defendant of the purported fraud he is defending against[,]" *New Century Bank, N.A. v. Carmell* (*In re Carmell*), 424 B.R 401, 412 (Bankr. N.D. Ill. 2010), some level of particularity is required by Fed. R. Civ. P. 9.  "'Particularity' means 'the who, what, when, where, and how of the fraud … .'"  *Schneider v. Billon* (*In re Billon*), No. 20 A 413, 2021 WL 2908970, at *3 (Bankr. N.D. Ill. July 12, 2021) (quoting *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)).  "[F]raud requires more than [a] breach of promise … ."  *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005).  "[F]ailure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud."  *Id.* (emphasis in original).

### 1.  Count I – 523(a)(2)(A) - False Representation

Section 523(a)(2) bars debtors, such as Defendant, from discharging debts "obtained by 'false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2).  In Count I, Plaintiff claims false representations by the Defendant establish his claim.  For this claim for relief to survive a motion to dismiss under section 523(a)(2)(A), Plaintiff must plausibly allege: (1) Defendants made a false representation or omission; (2) they knew that representation was false or made it with reckless disregard for the truth; (3) they made the statement with the intent to deceive Plaintiff; and (4) Plaintiff justifiably relied on the representation.  *See Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

"Justifiable reliance . . . requires only that the creditor did not blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (internal quotation omitted).  "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (quoting *Field v. Mans*, 516 US 49, 70 (1995)).  "However, a plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." *Johnston v. Campbell* (*In re Campbell*), 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (internal quotation omitted).

The Complaint asserts that Defendant made two false representations.  First, Plaintiff claims that Defendant guaranteed the full return of Plaintiff's investments and second, that the checks Defendant issued would be paid by the bank.  Complaint, ¶ 37.

However, the Complaint fails to plead that Defendant knew the money would not be returned, making the statement false.  As alleged, the facts add up to a promise to repay Plaintiff

8

that went poorly, albeit with some questions about what happened.  Was Defendant aware the scheme was illegal?  What was the actual scheme – *i.e.* what was the principal used for if it was then to be quickly returned to the Plaintiff?  How were the profits to be paid?  All of these questions bear on whether the statements were materially false when they were made.

The Complaint even fails to allege that Defendant did not invest the money, only that there is no evidence that he did invest.  Paragraph 29 of the Complaint does allege that Defendant "falsely represent[ed] himself as an accredited broker with legitimate securities firms," but the paragraph is so vague it is not implicitly clear that statement applies to the Plaintiff, let alone other facts (*e.g.* whether Defendant was an accredited broker but not with the firms he mentioned or whether he was not accredited at all).  The Complaint's stated misrepresentations amount to bad checks and a failed investment guarantee, which together appear to amount to a typical bad investment as opposed to intentional deception.

Plaintiff also fails to properly plead justifiable reliance.  Plaintiff highlights that the investment scheme was illegal under Greek law as a fact.  Plaintiff never pleads that he was unaware of the illegal nature of the investment scheme.  Based on a straight forward reading of the Complaint, it appears the illicit nature of the investment scheme was easily discernable.  If Plaintiff knew the scheme was illegal, then he also should have been on notice that Defendant's promises of profits were problematic.  Further,  the Complaint alleges that Defendant solicited the investment in the beginning of 2002, but then, as part of the investment scheme, would repay the entire principle by May 25, 2002.  Complaint, ¶¶ 9, 13.  The Complaint is unclear on whether the investment would continue after that date, whether the profits would be reinvested or also repaid on that date, or whether the repayment was something else.  It is impossible to know from

the facts alleged whether Defendant simply made a promise to pay or whether he made a false

representation upon which Plaintiff justifiably relied.

For the reasons stated above, Count I must be dismissed.

### 2. Count II – 523(a)(2)(A) - Actual Fraud

Actual fraud is the basis for Count II.  The "term 'actual fraud' in § 523(a)(2)(A)

encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a

false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016).  To allege an

actual fraud claim, the objecting creditor must allege that "(1) actual fraud occurred; (2) the

debtor intended to defraud the creditor; and (3) the debtor's actual fraud created the debt at

issue."  *Thazhathuputhenpurac v. Abraham* (*In re Abraham*), 582 B.R. 202, 214 (Bankr. N.D. Ill.

2018) (internal quotation omitted). "Unlike false pretenses and false representation, 'actual

fraud' requires neither a misrepresentation, nor reliance." *Id.* at 213 (internal citations omitted).

Actual fraud encompasses "any deceit, artifice, trick, or design involving direct and active

operation of the mind, used to circumvent and cheat another[.]"  *McClellan v. Cantrell*, 217 F.3d

890, 893 (7th Cir. 2000) (quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][e], p. 523-45 (15th ed.,

Lawrence P. King ed., 2000).

The Defendant has failed to sufficiently plead that Defendant committed actual fraud.

From the Complaint, it is impossible to determine what fraud is even being alleged.  Is the fraud

some type of check fraud related to the checks purported to return Plaintiff's initial investment?

If yes, then it is unclear that Defendant intentionally wrote bad checks or that he even knew the

checks were bad.  Is the fraud the allegedly illegal investment scheme itself?  Then it is unclear

who knew the scheme was illegal, whether funds were actually invested, or various other

questions about the scheme's details.  The Complaint does not set forth basic facts regarding

whether the investment agreement was oral or in writing, and the terms of the agreement that are described are missing or vague..  It is unclear how Plaintiff provided funds to Defendant, where the initial funds were sent, or what then happened to the funds. [5]  The body of Count II only generally alleges fraud with a general reference to allegations in the Complaint and fails to assist in determining the specific fraud at issue.

The number of unanswered material questions underscore the insufficiency of the Complaint in pleading fraud.  Not only do these questions make it difficult to determine whether there was 'deceit, artifice, trick, or design' in this case, they also clash with the particularity requirements of Fed. R. Civ. P. 9(b).  The lack of specificity is fatal.

For the reasons stated above, Count II must be dismissed.

### 3.  Count III – 523(a)(4) - Embezzlement and/or Larceny

To plead a claim for relief under § 523(a)(4) based on embezzlement, a creditor must plausibly allege that: "(1) the debtor appropriated funds or property for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *FNA Group, Inc. v. Arvanitis* (*In re Arvanitis*), Adv. No. 14-514, 2015 WL 5202990, at *17 (Bankr. N.D. Ill. Sept. 1, 2015). "Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991).

Although fraudulent intent is a required element, it need not be pleaded with particularity. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  It is not clear from the Complaint that the debt was obtained through fraudulent intent or deceit.  The "actions" described in the paragraphs associated with

---

[5] In paragraph 60 of the Complaint (part of Count IV), Plaintiff alleges Defendant transferred the payments to other parties as listed in paragraph 16.  Paragraph 16 is a brief sentence stating Plaintiff presented a check and a bank did not honor it.  It is unclear who or what those other parties are or how paragraph 16 relates to that.  The allegation adds more confusion than substance.

this count do not sufficiently assert that the Debtor appropriated funds for his own benefit.  As discussed, based on the Complaint, the debt appears to be from an investment scheme that failed where the Defendant had promised success.

For the reasons stated above, Count III must be dismissed.

### 4.   Count IV – 523(a)(4) - Defalcation

To state a claim under section 523(a)(4), a creditor must allege "(1) that the debtor acted as a fiduciary to the creditor when the debt was created, and (2) that the debt was caused by fraud or defalcation." *Estate of Cora v. Jahrling* (*In re Jahrling*), 816 F.3d 921, 925 (7th Cir. 2016) (internal quotation omitted).  "Defalcation means the misappropriation of funds held in trust for another in any fiduciary capacity and the failure to properly account for such funds." *Wians v. Wians* (*In re Wians*), 523 B.R. 124, 130 (Bankr. N.D. Ill. 2014) (internal quotation omitted). "[D]efalcation requires proof of 'a culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.'" *Jahrling*, 816 F.3d at 925  (quoting *Bullock v. BankChampaign*, 569 U.S. 267, 273-74 (2013).

Plaintiff alleges a fiduciary relationship between himself and the Defendant, that of investee and investor.  *See Moore v. Murphy* (*In re Murphy*), 297 B.R. 332 (Bankr. D. Mass. 2003) (discussing whether a stockbroker – investor relationship was a fiduciary relationship for defalcation).  Plaintiff, in the Complaint, concludes that previously alleged fraud satisfies the second element, however, as previously discussed, Plaintiff has failed to properly plead fraud. Likewise, Plaintiff has failed to plead defalcation in that Plaintiff failed to allege that Defendant had 'a culpable state of mind' such that it amounts to defalcation.  Even if Plaintiff pleaded that Defendant was aware the investment scheme was illegal, it is unclear that the illegality created the debt at issue.  If funds were put into a prohibited investment account, there is no reason those

12

funds would suddenly disappear – something else must have happened and, at present, it appears the investment simply failed.

For the reasons stated above, Count IV must be dismissed.

**5.    Count V – 523(a)(6) - Willful and Malicious Injury**

Section 523(a)(6) excepts from discharge any debt "for willful or malicious injury by the debtor to another entity or to the property of another entity."  The section essentially "excepts debts resulting from intentional torts." *Groom v. Krook* (*In re Krook*), 615 B.R. 479, 487 (Bankr. N.D. Ill. 2020).  "A debt for willful and malicious conversion is nondischargeable under [section 523(a)(6)]." *First Nat'l Bank of Red Bud* v. *Kimzey* (*In re Kimzey*), 761 F.2d 421, 424 (7th Cir. 1985) (*overruled on other grounds*); *see also Bank v. Yates* (*In re Sitton*), No. 24-AP-1046, 2024 WL 4481074 (Bankr. W.D. Okla. Oct. 11, 2024) (discussing conversion as a willful and malicious injury under section 523(a)(6)).

The Complaint states that Defendant converted *Plaintiff's* property.  However, other than the conclusory allegations referring to "actions" set forth in the Complaint, it is not clear that the debt was created by any willful or malicious means.  Like the counts before it, Count V needs additional allegations to state a claim.

For the reasons stated above, Count V must be dismissed.

**D.    Leave to Amend**

In the Seventh Circuit, leave to amend should "be freely given … [u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted … ." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quotation omitted).  The Complaint suffers from missing details and unanswered

13

questions.  While the Plaintiff failed to state a claim, it is very possible he has a claim to state.

Therefore, Plaintiff is granted leave to amend his complaint.

## IV.  CONCLUSION

For all of the reasons stated above, the motion to dismiss the Complaint 1) is denied on

the bases that Plaintiff's causes of action are not time-barred; and 2) is granted as to counts I –

VI for failure to state a claim.  Plaintiff is granted leave to amend.  The court will enter an order,

consistent with this ruling.


ENTERED:



Date:   February 26, 2025

_____

Honorable DAVID D. CLEARY
United States Bankruptcy Judge